UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANIEL M. MULLENIX and CINDY C. MULLENIX, D & C ENTERPRISES, INC., a Washington corporation, f/k/a INLAND MEATS, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>SYSCO SPOKANE, INC., a Delaware corporation,<br><br>Defendant. | No. CV-13-305-LRS<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE CALCULATION OF EARNOUT AMOUNT DUE** |

**BEFORE THE COURT** is Plaintiffs' Motion For Partial Summary Judgment Re Calculation Of Earnout Amount Due (ECF No. 19). The motion was heard with oral argument on June 12, 2014. Colette C. Leland, Esq., argued for Plaintiffs. Thaddeus O'Sullivan, Esq., argued for Defendant.

**I. BACKGROUND**

On May 1, 2012, Inland Meats, Inc. (now known as D & C Enterprises), Daniel M. Mullenix, Cindy C. Mullenix, and Sysco Spokane, Inc., entered into a contract for the sale of substantially all of Inland's assets to Sysco. This contract is referred to as the Asset Purchase Agreement (APA). The sale closed on May 18, 2012. The sale price was $2,000,000. Of the purchase price, $250,000 was withheld as an indemnity,

**ORDER GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT - 1**

and $750,000 was held back as an earnout payable over two "Performance Periods," that being two one year periods following the closing. Mr. Mullenix entered into a two year employment agreement as part of the APA.

The purpose of the earnout was to provide an incentive to Mr. Mullenix to retain Inland's customers and convert them to Sysco customers. During a Performance Period, Mullenix would receive credit for 100 percent of sales to customers who formerly bought only from Inland (Seller Customers) and would receive a prorated credit for customers Inland shared with Sysco (Shared Customer). If the total credit for sales to both Seller and Shared Customers was at least 50 percent of Inland's total Base Year sales, Sysco would pay an earnout on a sliding scale from $187,500 to $375.000.

At issue in this partial summary judgment motion is whether Defendant unjustifiably deprived Mr. Mullenix of an earnout amount pursuant to the provisions of the APA and the amendments thereto. Plaintiffs are moving for summary judgment on their "Ninth Claim For Relief: Breach Of Contract-APA" pled in their Verified Amended Complaint (ECF No. 10).

## II.  UNDISPUTED FACTS[1]

---

[1] The court has gleaned these uncontroverted facts from the Statements of Facts filed by the parties (ECF Nos. 20, 35 and 50). Although Defendant offers "responses" to Plaintiffs' Statement of Facts Nos. 41, 43, 48 and 52, these responses do not controvert any of Plaintiffs's facts. In their Supplemental LR 56.1 Statement Of Undisputed Facts (ECF No. 50), Plaintiffs correct citations to the record where the spreadsheets referenced in Fact Nos. 48 and 52 can be found.

**ORDER GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT - 2**

Case 2:13-cv-00305-LRS    Document 63    Filed 07/03/14

1   Section 2.5 of the May 1, 2012 APA concerned "Earnout Payments." The
2   amount of the earnout payable to Mullenix was dependent upon the Retained Sales
3   Percentage for each Performance Period. Section 2.5(a)(iv). The Retained Sales
4   Percentage was to be determined by dividing the Performance Period Retained Sales
5   Amount by the Base Sales Amount. Section 2.5(a)(viii), (x). The Retained Sales
6   Amount is the sum of Sysco Spokane's sales to the Seller Customers and the sum of
7   Mullenix's prorated credit for sales to each Shared Customer. Section 2.5(a)(viii),
8   (xiii).
9   Because Inland and Sysco Spokane sold to some of the same customers, the
10  parties agreed Inland would receive credit for Performance Period sales to the Shared
11  Customers according to a pre-determined percentage (Shared Account Percentage).
12  The higher Inland's percentage, the more credit it would receive in the two
13  performance periods following the sale. Section 2.5(a)(xiii) of the APA states:

> "Seller Shared Account Percentage" means, with respect to each Shared Customer, the percentage . . . set forth on Schedule 2.5(a)(xiii) attached hereto in respect of such Shared Customer which was calculated by dividing (i) Seller's [Inland's] gross sales of all products to such Shared Customer during the Base Period by (ii) the sum of Seller's and Purchaser's [Sysco Spokane's] and its Affiliates' gross sales of all products to such Shared Customer during the Base Period [April 1, 2011 through March 31, 2012].

20  The parties had to determine and agree on each party's base year sales to each
21  account in the Base Year in order to arrive at the Shared Account Percentages that
22  were to be used to calculate the total Retained Sales Percentage for each Performance
23  Period.
24  On May 1, 2012, the parties executed the APA without an agreed Schedule
25  2.5(a)(xiii) as referred to in Section 2.5(a)(xiii).
26  On May 18, 2012, the parties entered into an "Amendment to Asset Purchase

**ORDER GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT - 3**

Agreement" (also known as the First Amendment). (See pp. 139-141 of ECF No. 24-2). Paragraph 3(i) of the First Amendment states:

> Prior to the Closing Date [May 18], Seller [Inland Meats, Inc.] has delivered to Purchaser [Sysco Spokane] **all** information required for the **completion** of Schedule 2.5(a)(xiii) other than the Base Sales Amount attributable to sales to URM Food Services/URM Stores, Inc. during the Base Period for which the URM customer for such products is identifiable to Seller, on a customer by customer, month by month basis (the "Direct URM Customer Sales Amounts"). Notwithstanding anything to the contrary set forth in this Section 2.5 [of the APA], the parties hereby agree that Seller shall have until July 1, 2012 to provide to Purchaser all Direct URM Customer Sales Amounts, which information shall be provided in MS Excel and shall use the same Shared Customer names as those included on Schedule 2.5(a)(xii). Seller hereby agrees that the sum of all Direct URM Customer Sales Amounts and all gross sales of products to all other Seller Customers and Shared Customers for the Base Period, as set forth on the **final** Schedule 2.5(a)(xiii), shall be an amount that is within $15,000 of the Base Sales Amount.

(Emphasis added in **bold**).

Paragraph 3(ii) states:

> Within fifteen (15) days following the date on which the Direct URM Customer Sales Amounts are delivered to Purchaser [Sysco Spokane], Purchaser, shall prepare, with the reasonable input of Seller [Inland Meats, Inc.], and deliver to Seller a **completed** version of Schedule 2.5(a)(xiii), which shall set forth a list of the Seller Customers, the Shared Customers and the Seller Shared Account Percentage with respect to each Shared Customer. . . . Within fifteen (15) days following its receipt of Purchaser's proposed Schedule 2.5(a)(xiii), Seller shall notify Purchaser in writing whether Seller objects to the calculations set forth therein (the "Objection Notice"). **If Seller fails to deliver the Objection Notice to Purchaser within such fifteen (15) day period, then Seller shall be deemed to have accepted and agreed to Schedule 2.5(a)(xiii) . . . .**

(Emphasis added in **bold**).

A Second Amendment To Asset Purchase Agreement was entered into on June 29, 2012, extending to August 1, 2012, the date on which Seller (Inland Meats, Inc.) was to deliver the Direct URM Customer Sales Amounts to Purchaser (Sysco Spokane).

**ORDER GRANTING MOTION**
**FOR PARTIAL SUMMARY JUDGMENT - 4**

Pursuant to the Second Amendment, Robert P. Sanders, Inland's accountant, sent the detail of Inland's URM shared customer information to Kirk Vogeley, Senior Director of Finance for Sysco Corporation [2] and to Lisa Payrow, outside counsel for Sysco Spokane, on July 31, 2012.

Ms. Payrow advised Mr. Vogeley that "Sysco now has 15 days to complete the spreadsheet listing the Seller Customers, Shared Customers and Seller Shared Account Percentages (with reasonable input of Seller)."

The following day Mr. Vogeley emailed Mr. Sanders to inquire about possible missing information regarding the URM sales. On August 7, Mr. Vogeley followed up his inquiry and notified Mr. Sanders that Michael Nguyen, Vice President of Finance/CFO for Sysco Spokane, was "completing the Sysco sales portion for all shared customers." Mr. Vogeley explained he was "just trying to make sure Inland's total sales reconcile."

Mr. Sanders explained: "What we sent a short time ago was the shared accounts. There are also apparently non shared URM accounts and also the direct sales to URM. I think the missing link may be the detail of the non shared URM accounts."

On August 16, 2012, Ms. Payrow asked Inland to agree to toll the 15-day period within which Sysco Spokane was required to provide a complete Schedule 2.5(a)(xiii), until such time as Mr. Sanders was able to provide the missing information regarding the URM Seller Customers.

Brian Hipperson, Inland's counsel, agreed and confirmed Inland would provide the information no later than Monday, September 17, 2012.

On August 17, 2012, Mr. Vogeley forwarded to Mr. Sanders a spreadsheet of shared accounts from Mr. Nguyen's latest update. The updated spreadsheet stated Sysco Spokane's Base Year sales to Shared Customers as $5,693,241.

---

[2] Sysco Corporation is the parent company of Sysco Spokane, Inc.

**ORDER GRANTING MOTION**
**FOR PARTIAL SUMMARY JUDGMENT - 5**

1    Mr. Vogeley opined that the parties still needed to resolve the discrepancy in
2 the sales to URM customers who were not shared between Inland and Sysco.
3    In accordance with the parties' agreements, Mr. Sanders sent two spreadsheets
4 to Mr. Vogeley on September 17, 2012.
5    Mr. Sanders suggested these spreadsheets would answer Mr. Vogeley's
6 questions regarding the reconciliation of URM sales.  Mr. Sanders explained
7 additional invoices were found that should have been included in the original shared
8 customer spreadsheet, which brought the total URM sales to $2,537,000, "a bit higher
9 than the original sales figure."
10    On September 18, 2012, Mr. Vogeley responded "I think we should now have
11 all the pieces of the puzzle."
12    Mr. Vogeley proposed the parties continue to use the original URM base sales
13 amount of $2,500,188, and suggested Mr. Nguyen would update the "master
14 spreadsheet to reflect Inland Base Year sales of $8,844K and this is what Mike will
15 use to calculate the earnout . . . . If you and Dan [Mullenix] would please let us know
16 if this is acceptable, we can then proceed with growing the sale to ensure a win/win
17 for everyone."
18    Mr. Vogeley's proposed spreadsheet again stated Sysco Spokane's Base Year
19 sales to the Shared Customers as $5,693,241.
20    Mr. Vogeley followed up with Mr. Sanders on September 25 to confirm Mr.
21 Sanders and Mr. Mullenix agreed with the spreadsheets attached to Mr. Vogeley's
22 September 18 email.  "We would like for this to get finalized so that Mike can start
23 tracking the progress of the sales for earnout purposes through one final consolidated
24 spreadsheet."
25    The following day Mr. Sanders confirmed Mr. Mullenix's agreement.  Mr.
26 Vogeley then directed Mr. Nguyen to update the consolidated spreadsheet with URM
27 detail by customer.
28    On October 2 (15 days following the transmission of the missing URM

**ORDER GRANTING MOTION**
**FOR PARTIAL SUMMARY JUDGMENT - 6**

information), Mr. Nguyen notified the parties that he had consolidated all of the spreadsheets into one per Mr. Vogeley's request. The attached spreadsheet again stated Sysco Spokane's Base Year Sales to Shared Customers as $5,693,241.

Mr. Vogeley was a recipient of Mr. Nguyen's email notification and he responded to it as follows:

> I noticed one formula correction that needed to be made to reflect the [Inland] base year sales as $8.8m as you noted below. I changed the formula in column AA so we are using the new total for Inland's sales from column X and what we had in Column U originally. **Going forward Mike, you just plug the YTD sales in each customer in Column AC and then annualize for the appropriate period in cell AD574. Based on the retention achieved you would update AD577 to arrive at the earnout amount.**

(ECF No. 22-1 at p. 8)(Emphasis added).

Mr. Vogeley forwarded by email to Mr. Mullenix for his review the consolidated spreadsheet referred to above. Mr. Vogeley carbon copied the other participants in the negotiations, Mr. Nguyen, Ms. Payrow, and Sysco Spokane President Kevin Pribilsky, on the same email forwarding the aforementioned consolidated spreadsheet. The spreadsheet included a list of the Seller Customers, the Shared Customers, and the Seller Account Percentages with respect to each Shared Customer, as required by the APA and the First Amendment thereto. Mr. Vogeley's formula adjustment did not alter Sysco Spokane's Base Year Sales figure. Mr. Mullenix did not register any objection to the consolidated spreadsheet within fifteen (15) days.

On March 29, 2013, Kevin Pribilsky forwarded a year-to-date calculation of the earnout to Mr. Mullenix, and asked Mr. Mullenix to alert Mr. Pribilsky to any accounts that were not getting credit. The spreadsheet Mr. Pribilsky provided calculated Mullenix's Retained Sales Percentage based upon a Sysco Spokane Base Year Sales Amount of $8,820,151.

On April 23, 2013, Mr. Mullenix asked Mr. Pribilsky to send him updated figures for retained sales percentages. Mr. Pribilsky responded by providing a

**ORDER GRANTING MOTION**
**FOR PARTIAL SUMMARY JUDGMENT - 7**

spreadsheet, again showing Sysco Spokane's Base Year Sales for April 1, 2011 through March 31, 2012, as $8,820,151.

Mr. Mullenix's employment was terminated on May 16, 2013. On July 1, 2013, Sysco Spokane provided a spreadsheet calculating the Retained Sales Percentages under the APA for the First Performance Period. This spreadsheet constituted the "Retained Sales Notice" called for by Section 2.5(c) of the APA (provided no later than 45 days after the end of the First Performance Period). This spreadsheet listed Sysco Spokane Base Year Sales as $9,178,938. Mr. Mullenix timely objected per the APA.

On August 8, 2013, Sysco sent an updated Retained Sales Percentage calculation, which added Performance Period sales it had failed to track in its July 1, 2013 calculation, but also boosted Sysco Spokane's Base Year Sales to $10,115,946. Mr. Mullenix sent a supplemental objection the following day, notifying Sysco Spokane it had improperly used Base Year sales figures that did not comport with the APA.

Using Sysco Spokane's Base Year Sales as set forth in the October 2, 2012 spreadsheet to calculate the Retained Sales Percentage for the First Performance Period yields 79.16% of Inland Base Year Sales, for an earnout of $281,250.00.

Using Sysco Spokane's Base Year Sales as set forth in the spreadsheets provided by Mr. Pribilsky from March 29, 2103 forward yields a Retained Sales Percentage less than 50% and entitles Mr. Mullenix to no earnout.

### III. DISCUSSION

Interpreting a contract provision is a question of law if the interpretation does not depend on the use of extrinsic evidence or if only one reasonable inference can be drawn from the extrinsic evidence. *GMAC v. Everett Chevrolet, Inc.*, 179 Wn.App. 135, 317 P.3d 1074 (2014). During interpretation, a court's primary goal is to ascertain the parties' intent at the time they executed the contract. *Berg v.*

**ORDER GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT - 8**

*Hudesman*, 115 Wn.2d 657, 663, 801 P.2d 222 (1990). "[E]xtrinsic evidence is admissible as . . . an aid in ascertaining the parties' intent." *Id*. at 667. Extrinsic evidence should not, however, be used to import into a contract an intent that is not expressed in the contract itself. *Id*. at 669. A court looks for the parties' intent in the contract's language, subject, and objective; the circumstances surrounding formation; the parties' subsequent conduct; and the reasonableness of the parties' interpretations. *Tanner Elec. Coop v. Puget Sound Power & Light*, 128 Wn.2d 656, 674, 911 P.2d 1301 (1996). "Summary judgment as to contract interpretation is proper if the parties' written contract, viewed in light of the parties' other objective manifestations, has only one reasonable meaning." *GMAC*, 179 Wn.App. at 135.

The plain language of Paragraph 3(ii) of the First Amendment contemplated that Sysco Spokane would deliver a "completed" version of Schedule 2.5(a)((xiii) to Inland within fifteen (15) days following the date on which Inland delivered the Direct URM Customer Sales Amounts to Sysco Spokane. The Direct URM Customer Sales Amounts were delivered to Sysco Spokane on September 17, 2012. Exactly fifteen (15) days later on October 2, 2012, Sysco Spokane delivered to Inland a spreadsheet "set[ting] forth a list of the Seller Customers, the Shared Customers and the Seller Shared Account Percentage with respect to each Shared Customer" precisely as contemplated by Paragraph 3(ii). The only reasonable inference that can be drawn from the extrinsic evidence is that the parties intended the spreadsheet delivered by Sysco Spokane on October 2, 2012 to be the "completed" Schedule 2.5(a)(xiii).

"Completed" is consistent with the circumstances surrounding the delayed creation of the October 2, 2012 spreadsheet, the parties' references to the URM Direct Customer Sales Amounts as the "last piece," Mr. Vogeley's expressed desire to get this "finalized," and the parties' reference in Paragraph 3(i) to the "completion" of Schedule 2.5(a)(xiii)("Prior to the Closing Date [May 18], Seller [Inland Meats, Inc.] has delivered to Purchaser [Sysco Spokane] all information required for the

**ORDER GRANTING MOTION**
**FOR PARTIAL SUMMARY JUDGMENT - 9**

completion of Schedule 2.5(a)(xiii) other than the Base Sales Amount attributable to sales to URM Food Services/URM Stores, Inc. during the Base Period for which the URM customer for such products is identifiable to Seller, on a customer by customer, month by month basis).  Not only did Sysco Spokane  make sure to respond within 15 days, as called for by Paragraph 3(ii) of the Amendment to the Asset Purchase Agreement, but it made no disclaimer of any type when it provided the October 2, 2012 spreadsheet, consistent with an intention that the  spreadsheet was the "completed" Schedule 2.5(a)(xiii) from which the Retained Sales Percentage would be computed to determine the earnout amount.

Deposition testimony from Sysco Spokane CFO Michael Nguyen, cited in Plaintiffs' Supplemental Statement of Facts Nos. 76-86 (ECF No. 50), is further proof that the parties, by their pre-October 2, 2012 conduct and subsequent conduct, intended the October 2, 2012 spreadsheet to be the "completed" Schedule 2.5(a)(xiii). Mr. Nguyen identified the October 2, 2012 spreadsheet as the spreadsheet he was working on with Mr. Vogeley into which he input Sysco Spokane's base year sales and which calculated the shared account percentages.  He confirmed he calculated Sysco Spokane's base year sales as $5,693,241 based upon he and his staff pulling sales records from Sysco Spokane's system on all accounts that were active within the system.  He had no reason to believe at the time that he and his staff had not calculated all base year sales.  Upon completion of his calculation, Mr. Nguyen provided Sysco Spokane President, Kevin Pribilsky, with an opportunity to review the Sysco Spokane base year sales entered into the spreadsheet.  Mr. Pribilsky made no corrections.  Mr. Nguyen understood  his portion of the report to be finished and the only updates he made to the spreadsheet were performance period updates of actual or hypothetical sales.  After Mr. Vogeley forwarded the October 2, 2012 spreadsheet to Inland, Mr. Nguyen shifted from calculating Sysco Spokane 's base year sales and shared account percentages to tracking performance period sales for the earnout calculation.  Mr. Nguyen did not recall ever being asked to make any

**ORDER GRANTING MOTION**
**FOR PARTIAL SUMMARY JUDGMENT - 10**

adjustments to the Sysco Spokane base year sales reported on the October 2, 2012 spreadsheet, nor does he recall any person from Sysco Spokane discussing with him between October 2, 2012 and August 1, 2013, the possibility that the base year sales for Sysco Spokane reported on the spreadsheet were incorrect or inaccurate.

Sysco Spokane says the October 2, 2012 spreadsheet cannot be the "completed" Schedule 2.5(a)(xiii) contemplated by the parties because that spreadsheet fails to account for "actual gross sales" of "all" of its products to several shared customers. Sysco Spokane offers several examples of what it says are "omitted Sysco Spokane base period sales in the October 2, 2012 spreadsheet" which it says "inaccurately inflates Inland's Seller Shared Account Percentage and "result[s] in an outcome not intended by the Parties, namely basing the earnout on false base period sales numbers."

While Section 2.5(a)(xiii) of the APA refers to "gross sales of all products," it does not refer to "actual gross sales." Moreover, Defendant had an adequate opportunity to account for the gross sales of all of its products to shared customers. Such an opportunity for both parties was all they mutually intended as reflected in the language of the First Amendment. It is what each of them were provided as reflected in their course of dealing leading up to the delivery of the October 2, 2012 spreadsheet. As noted above, Sysco Spokane made no sort of disclaimer when it tendered the spreadsheet. There is simply nothing in the language of Section 2.5(a)(xiii) of the APA that is inconsistent with the language in Section 3(i) and (ii) of the First Amendment to the APA. Neither Section 2.5(a)(xiii) or the First Amendment provide exceptions for late-discovered errors or misrepresentations.

Sysco Spokane also asserts the APA required the gross sales be prepared in accordance with Generally Accepted Accounting Principles (GAAP), and that the numbers in the October 2, 2012 spreadsheet were not so prepared. According to Sysco Spokane, "[i]t is impossible to prepare a Retained Sales Notice in accordance with GAAP without using all of the base period gross sales for both Inland and Sysco

**ORDER GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT - 11**

Spokane in calculating the Seller Shared Account Percentage." Defendant cites Section 2.5(c) of the APA which provides in relevant part:

> Purchaser [Sysco Spokane] shall be responsible for calculating the Performance Period Retained Sales Amount and the Retained Sales Percentage. Purchaser will deliver a notice (the "<u>Retained Sales Notice</u>") to the Seller no later than forty-five (45) days after the end of each Performance Period which sets forth in reasonable detail Purchaser's calculation of the Performance Period Retained Sales Amount for the applicable Performance Period, and the associated Retained Sales Percentage and Performance Period Earnout Payment payable to Seller, if any. The Retained Sales Notice will by accompanied by a report of an appropriate officer of Purchaser stating that the Retained Sales Notice was prepared in accordance with GAAP.

As Plaintiffs note, there is no express requirement in Section 2.5(a)(xiii) or Section 2.5(c) that Schedule 2.5(a)(xiii) be prepared in accordance with GAAP, although the parties knew how to include such a requirement as evidenced by Section 2.5(c) and by Section 2.4(a) and (b) pertaining to "Calculation of Closing Net Working Capital." Furthermore, the court agrees with Plaintiffs that application of GAAP to only performance period numbers is consistent with GAAP's principles and that recalculation of previously agreed base year figures was not required. This is confirmed by Mr. Vogeley's statement that "[g]oing forward" Sysco Spokane should simply input its year-to-date sales into Schedule 2.5(a)(xiii).[3]

Plaintiffs also correctly note that applying Section 2.5(c) of the APA to Schedule 2.5(a)(xiii) would subject Schedule 2.5(a)(xiii) to a second verification and dispute procedure beyond the verification and dispute procedure already called for in the First Amendment to the APA at Section 3(ii) and (iii). Plaintiffs say this would

---

[3] In his Supplemental Declaration, Mr. Sanders states no agent of Sysco Spokane ever requested a GAAP certification of Inland's base year sales or indicated that Sysco Spokane certified Inland's base year sales used to calculate the Retained Sales Percentage. (ECF No. 53 at Paragraph 16).

**ORDER GRANTING MOTION**
**FOR PARTIAL SUMMARY JUDGMENT - 12**

render superfluous the latter verification and dispute procedure. The court agrees. This is another indication that interpretation of the provisions in the First Amendment to the APA relating to preparation of Schedule 2.5(a)(xiii) is not in anyway materially impacted by what is contained in the APA itself.

After October 2, 2012, Mr. Mullenix did not waive his right to assert that the October 2, 2012 spreadsheet constituted the "completed" Schedule 2.5(a)(xiii). Although Mr. Pribilsky says that during the spring of 2013, he made it "clear" to Mr. Mullenix that he (Pribilsky) was correcting the Sysco Base Year Sales, it would have been reasonable for Mr. Mullenix to assume at that point, as he asserts in his Declaration and Supplemental Declaration (ECF No. 24 at Paragraphs 12 and 13; ECF No. 51 at Paragraphs 10 and 11), that his discussions with Mr. Pribilsky concerned performance period sales impacting the earnout calculation, not base year sales. Neither Mr. Pribilsky's March 29, 2013 email (ECF No. 24-4 at p. 146) or his April 23, 2013 email (ECF No. 24-7 at p. 156) put Mr. Mullenix on clear notice that after nearly six months, and with the First Performance Period coming to a close, Sysco Spokane now specifically intended to revise the October 2, 2012 spreadsheet. Per the terms of the APA, Mr. Mullenix timely provided an objection to Sysco Spokane's July 1, 2013 Retained Sales Notice which further adjusted upwards Sysco Spokane's base year sales. Although Mr. Mullenix's July 16, 2013 objection did not take issue with Sysco Spokane's base year sales, the follow-up supplemental objection by his counsel, dated August 12, 2013, did: "The revised earnout calculation appears to inappropriately uses calculations of Sysco's base year sales to shared accounts that does not comport with the contract." (ECF No. 24-11 at p. 202). The fact the supplemental objection did not specifically refer to the October 2, 2012 spreadsheet or propose an adjustment to Sysco Spokane's Retained Sales Notice is inconsequential.[4] Moreover, pursuant to Section 10.3 of the APA, any modification

---

[4] In December 2012, Plaintiffs' counsel addressed a separate earnout dispute

**ORDER GRANTING MOTION**
**FOR PARTIAL SUMMARY JUDGMENT - 13**

of the APA had to be in writing signed by all of the parties.

The extrinsic evidence does not permit a reasonable inference that the parties mutually intended the October 2, 2012 spreadsheet to contain only preliminary base years sales figures. Further supporting this conclusion is that: 1) Mr. Pribilsky changed the base year sales amounts nearly six months later without the knowledge and input of CFO Nguyen who was a key player from Sysco Spokane in preparing the October 2, 2012 spreadsheet; 2) after October 2, 2012, Sysco Spokane never provided Mr. Mullenix with a document it specifically identified as a now "completed" Schedule 2.5(a)(xiii); and 3) Sysco Spokane's interpretation would require the court to unreasonably believe the parties did not intend to have a binding upfront benchmark upon which to base the earnout amount, therefore leaving Mr. Mullenix guessing until near the expiration of the First Performance Period about the benchmark against which new sales would be measured.

The only reasonable inference that can be drawn from the extrinsic evidence is the parties mutually intended the October 2, 2012 spreadsheet to be the "completed" Schedule 2.5(a)(xiii). Therefore, Mr. Pribilsky's subsequent upward revisions of Sysco Spokane's base year sales amount, whatever the motive, constitute an impermissible unilateral alteration of the parties' agreement for which no consideration was given.

**IV. CONCLUSION**

Plaintiffs' Motion For Partial Summary Judgment (ECF No. 19) is **GRANTED**. The court hereby declares the spreadsheet delivered to Mr. Mullenix on October 2, 2012 is the "completed" Schedule 2.5(a)(xiii) referred to in the First

---

with Sysco Spokane, Inc., unrelated to the amount of Sysco Spokane's base year sales which, as noted, were not revised upward by Mr. Pribilsky until April 2013.

**ORDER GRANTING MOTION**
**FOR PARTIAL SUMMARY JUDGMENT - 14**

Amendment to the APA. Based on the figures contained in that spreadsheet, Plaintiff is entitled to an earnout amount of $281,250.00 for the First Performance Period, an amount that falls within the range the parties contemplated (maximum of $375,000 per performance period). Plaintiff is also entitled to prejudgment interest on the earnout amount of $281,250.00. The court reserves determination of whether Plaintiff should be allowed to audit performance period sales numbers in order to confirm the earnout amount.

//

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and provide copies to counsel.

**DATED** this __3rd__ day of July, 2014.

*s/Lonny R. Suko*
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT - 15**