UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

DANIEL M. MULLENIX and          )
CINDY C. MULLENIX, D & C          )
ENTERPRISES, INC., a Washington   )    No. CV-13-305-LRS
corporation, f/k/a INLAND MEATS,  )
INC.,                             )    **ORDER GRANTING**
                                  )    **PLAINTIFFS' MOTION**
                                  )    **FOR PARTIAL SUMMARY**
                                  )    **JUDGMENT RE TERMINATION**
            Plaintiffs,           )    **OF EMPLOYMENT AND**
                                  )    **WILLFUL WITHHOLDING**
      vs.                         )    **OF WAGES**
                                  )
SYSCO SPOKANE, INC.,              )
a Delaware corporation,           )
                                  )
                                  )
            Defendant.            )
_____ )

**BEFORE THE COURT** is Plaintiffs' Motion For Partial Summary Judgment
Re Termination Of Employment And Willful Withholding Of Wages (ECF No. 27).
The motion was heard with oral argument on June 12, 2014.  C. Matthew Andersen,
Esq., argued for Plaintiffs.  Thaddeus O'Sullivan, Esq., argued for Defendant.

**I. BACKGROUND**

On May 1, 2012, Inland Meats, Inc. (now known as D & C Enterprises), Daniel
M. Mullenix, Cindy C. Mullenix, and Sysco Spokane, Inc., entered into a contract for
the sale of substantially all of Inland's assets to Sysco Spokane.  This contract is
referred to as the Asset Purchase Agreement (APA).  The sale closed on May 18,
2012, and on that same date, Mr. Mullenix entered into a two year employment

**ORDER GRANTING MOTION**
**FOR PARTIAL SUMMARY JUDGMENT - 1**

1   agreement as part of the APA.

2       At issue in this partial summary judgment motion is whether Defendant

3   improperly terminated Mr. Mullenix's employment and wrongfully and willfully

4   withheld wages from him.  Plaintiff is moving for summary judgment on his "First

5   Claim For Relief: Breach Of Employment Contract," "Second Claim For Relief:

6   Violation Of The Covenant Of Good Faith And Fair Dealing- Employment

7   Agreement," and "Fifth Claim For Relief: Willful Withholding Of Wages" pled in his

8   Verified Amended Complaint (ECF No. 10).

9

10  **II.  UNDISPUTED FACTS**

11      Section 6(b) of the May 18, 2012 Employment Agreement between Mr.

12  Mullenix ("Executive") and Sysco Spokane ("Company") states:

13          During the Term, the Company may terminate Executive's
            employment (x) **without Cause . . . upon thirty (30) days**
14          **written notice to Executive or (y) for Cause upon written**
            **notice of termination to Executive . . . which notice shall**
15          **specify Cause in reasonable detail.**  As used herein,
            "Cause" shall mean: (i) Executive's failure to substantially
16          perform his duties hereunder; (ii) Executive's violation of
            the Sysco Corporation Business Code of Conduct . . .; (iii)
17          Executive's act(s) or omission(s) amounting to negligence
            in the performance of his duties hereunder to the detriment
18          of the Company; (iv) Executive's fraud or embezzlement
            against the Company, its suppliers or customers; (v)
19          Executive's conviction of or pleading guilty to any felony
            or misdemeanor involving moral turpitude under applicable
20          law; **(vi) Executive's failure to observe or perform any**
            **covenant, condition or provision of Sections 9 through 12**
21          **of this Agreement; or (vii) Executive's breach of that certain**
            **Noncompetition and Nonsolicitation Agreement of even date**
22          **herewith, by and between Executive and the Company**
            **(the "Noncompetition Agreement")**.  **Except as to the**
23          **immediately preceding clauses (iv), (v), (vi) and (vii) and**
            **with respect to those Causes that are not capable of**
24          **being cured, Executive will have thirty (30) days from the**
            **date he receives written notice from the Company**
25          **specifying in reasonable detail the events or**
            **circumstances constituting Cause to cure such Cause, and**
26          **upon such timely cure, such Cause shall be deemed not**
            **to have occurred.**
27
    (ECF No. 29-1 at p. 12).  (Emphasis added).
28

**ORDER GRANTING MOTION**
**FOR PARTIAL SUMMARY JUDGMENT - 2**

Section 10 of the Employment Agreement states:

> Executive covenants and agrees that until this Agreement is terminated and for twelve (12) months thereafter, he will not, directly or indirectly, engage in any Competing Business within the Territory wherein Executive will perform duties that are the same or substantially similar to those Executive performed for the Company during the last twelve (12) months of Executive's employment with the Company. Executive covenants and agrees that the Territory set forth on Exhibit B attached hereto represents the geographical location throughout which the Company, and Executive on behalf of the Company, services customers and operates the Company Business.[1]

(ECF No. 29-1 at p. 14). Section 8(b) defines "Competing Business" as "any person or entity engaged in a business that is substantially similar to or the same as the Company Business, and only that portion of such business that is in competition with the Company Business." Section 8(a) defines "Company Business" as "the business of processing and packaging meat and poultry products and distributing meat, poultry, seafood and cheese products to restaurants and other commercial enterprises in the Territory as conducted by the Company as of the date hereof." (ECF No. 29-1 at p. 13). The "Territory" includes specified counties in Idaho, Washington, Montana and Oregon. The Oregon counties listed include Gilliam, Wheeler, Morrow and Umatilla. (ECF No. 29-1 at p. 21).

The "Noncompetition and Nonsolicitation Agreement of even date," also dated May 18, 2012, and between Sysco Spokane and Mr. Mullenix (as "Shareholder"), states in relevant part:

> Shareholder covenants and agrees that Shareholder shall not, during the Noncompetition period, either directly or indirectly, within the Territory (i) provide or perform services for the benefit of, manage, operate, or in any way participate in, a Competing Business, either on his or her own behalf or on behalf of any other Person, and regardless of whether as an employee, agent, consultant or independent contractor, paid or otherwise, or (ii) have a financial interest in, own or control any Competing Business, whether as a stockholder,

---

[1] "Company" means Sysco Spokane, Inc. Sysco Spokane, Inc., is a subsidiary of parent company, Sysco Corporation, Inc.

**ORDER GRANTING MOTION**
**FOR PARTIAL SUMMARY JUDGMENT - 3**

1    owner, partner, proprietor, lender or otherwise . . . .

2  (ECF No. 29-6 at p. 38).

3        "Competing Business" is defined as"

4        [A]ny person engaged in a business that is substantially
        similar to or the same as the Business, and only that portion
5        of the business that is in competition with the Business.

6  (ECF No. 29-6 at p. 36).

7        "Business" is a reference to Mr. Mullenix's previous business operating as

8  Inland Meats, Inc., that being "the business of processing and packaging meat and

9  poultry products and distributing meat, poultry, seafood and cheese products to

10  restaurants and other commercial enterprises in the Territory . . . ." (*Id.*).

11        "Territory" is defined as "the geographical location(s) described on

12  Exhibit A attached hereto, which the parties acknowledge are all of the geographical

13  locations in which Seller [Mr. Mullenix and Inland Meats] conducted the Business

14  as of the Closing Date [May 18, 2012] or within the twelve (12) months preceding the

15  Closing Date." (ECF No. 29-6 at p. 37). Exhibit A identifies certain counties in

16  Idaho, Washington and Montana. It does not identify any counties in Oregon.

17        Previously, on May 12, 2012, Mr. Mullenix signed a "Confidentiality and Non-

18  Competition Agreement." It states:

19        Employee agrees that s/he will during the term of his/her
        employment with Employer promptly and fully disclose to
20        Employer any business opportunity coming to Employee's
        attention, or conceived or developed in whole or part by
21        Employee, which relates to the Employer's business, or
        anticipated business. Employee will not at any time exploit
22        such business opportunities for his/her own gain or that of
        any people or entity other than Employer . . . .
23        Employee further acknowledges that Employer's business is
        conducted in the state of Idaho and in areas of the Inland
24        Northwest of Washington but that Employer may choose to
        expand its business to other locations during the course of
25        Employee's employment or shortly thereafter. Accordingly,
        Employee agrees that s/he will not compete with Employer
26        in any of these areas.

27  (ECF No. 48-2 at p. 50).

28        Neither the Employment Agreement or the "Noncompetition and

**ORDER GRANTING MOTION**
**FOR PARTIAL SUMMARY JUDGMENT - 4**

Nonsolicitation Agreement" make any specific reference to the May 12 "Confidentiality and Non-Competition Agreement." The May 12, 2012 agreement is not included in the May 18, 2012 Employment Agreement as a cause for termination.

On or about May 9, 2013, Sysco Spokane learned through an e-mail search that Mr. Mullenix had invested in a purchase of prime rib from a Florida company ("North South Foods"), which he later sold to a food distributor in Oregon ("Pacific Foods"). Pacific Foods is a vendor of Sysco Spokane that ships into the Sysco Spokane market. It is located in Tualatin, Oregon which is in Clackamas County.

On May 16, 2013, Mr. Mullenix was provided with a letter from Grant Birch, Director of Human Resources for Sysco Spokane, indicating that based on the findings of an investigation into Mr. Mullenix's activities, his employment was being "terminated for Cause pursuant to Section 6(b)(ii), (vi), and (vii)" of the Employment Agreement. (ECF No. 29-10 at p. 49). The termination occurred one day before Mr. Mullenix was due a $100,000 guaranteed bonus upon completion of his first year of employment, as specified in the May 18, 2012 Employment Agreement.

Mr. Birch sent Mr. Mullenix a follow-up letter dated May 28, 2013, providing additional information regarding the reasons for Mr. Mullenix's termination, but reiterating that the termination was "for Cause, . . . pursuant to Section 6(b)(ii), (vi), and (vii) of your Employment Agreement." (ECF No. 29-11 at p. 50).

**III.  SUMMARY JUDGMENT STANDARD**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975). Under Fed. R. Civ. P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727,

**ORDER GRANTING MOTION**
**FOR PARTIAL SUMMARY JUDGMENT - 5**

732 (9th Cir. 1985). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587. Nonetheless, summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23.

**IV. DISCUSSION**

Washington has long adhered to the "terminable-at-will" doctrine as governing the relationship between an employer and an employee. This relationship, however, can be modified by express contract; by unilateral contract if the terms provide for job security and such terms are supported by offer, acceptance and consideration; and by a species of estoppel if the employer creates an atmosphere of job security and fair treatment with promises of specific treatment in specific situations and the employee relies thereon. *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 437, 815 P.2d 1362 (1991). "Just cause" is the standard applied where a contract provides specific grounds for dismissal. If an employer relies on one of those grounds, it must reach

**ORDER GRANTING MOTION**
**FOR PARTIAL SUMMARY JUDGMENT - 6**

a good faith and reasonable conclusion that the ground exists and is supported by substantial evidence. *Id*. at 438.

"[A] discharge for 'just cause' is one which is not for any arbitrary, capricious, or illegal reason and which is based on facts (1) supported by substantial evidence and (2) reasonably believed by the employer to be true." *Baldwin v. Sisters of Providence in Washington, Inc.*, 112 Wn.2d 127, 139, 769 P.2d 298 (1989). Although the employer may not make arbitrary determinations of just cause, whether the plaintiff actually committed the violation is irrelevant; the question is whether "**at the time** plaintiff was dismissed defendant reasonably, in good faith, and based on substantial evidence believed plaintiff" had committed the violation. *Gaglidari*, 117 Wn.2d at438 (emphasis added).

"The duty of good faith and fair dealing applies when one party has discretion to determine certain terms of a contract." *Scribner v. Worldcom, Inc.*, 249 F.3d 902, 909 (9th Cir. 2001), quoting *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wn.App. 732, 935 P.2d 628, 632-33 (1997). The duty of good faith limits the employer's discretion to interpret or define cause for termination in a manner which undermines the employee's reasonable expectations as to what "cause" means. *Id*. at 911. The covenant of good faith and fair dealing requires "consistency with the justified expectations of the other party." *Id*. at 910, quoting *Restatement (Second) of Contracts*, §205, cmt. A (1979).[2]

---

[2] It appears in Washington there is not an implied covenant of good faith and fair dealing in an employment relationship which is terminable at will. As discussed above, however, good faith is relevant to the construction of a contract term. See *Gaglidari*, 117 Wn.2d at 459 (Brachtenbach J., concurring and dissenting). It is a covenant that is not implied, but which arises from the contract itself.

**ORDER GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT - 7**

1    The undisputed facts show that Sysco Spokane, at the time it discharged Mr.

2 Mullenix, did not reasonably and in good faith conclude Mr. Mullenix had violated

3 Section 10 of the Employment Agreement or the "Noncompetition and

4 Nonsolicitation Agreement" (Sections 6(b)(vi) and (vii) of the Employment

5 Agreement). Buying beef as an investment was not the "same or substantially

6 similar" to the duties performed by Mr. Mullenix in his capacity as "Director of

7 Business Development" reporting to the "Vice President of Sales." (See Section 3

8 of the Employment Agreement). Mr. Mullenix's duties involved selling, not buying.

9 Furthermore, buying beef as an investment did not involve "processing and packaging

10 meat and poultry products and distributing meat, poultry, seafood and cheese

11 products to restaurants and other commercial enterprises in the Territory . . . ."

12    Moreover, even assuming Mr. Mullenix's purchase of beef amounted to

13 competition with Sysco Spokane, it is clear he did not violate the territorial

14 restrictions specified in either the Employment Agreement or the "Noncompetition

15 and Nonsolicitation Agreement." Mr. Mullenix invested in a purchase of prime rib

16 from a Florida company which he later sold to a food distributor in Oregon located

17 in Tualatin, Oregon in Clackamas County. Florida is not one of the states specified

18 in the territorial restrictions set forth in either of the aforementioned agreements.

19 Oregon is not one of the three states specified in the "Noncompetition and

20 Nonsolicitation Agreement." And while several counties of Oregon are specified in

21 the Employment Agreement, Clackamas County is not one of them. The arbitrary and

22 capricious nature of Sysco Spokane's reliance on Section 10 of the Employment

23 Agreement and the "Noncompetition and Nonsolicitation Agreement" is revealed by

24 the fact that at the time Mr. Mullenix was terminated, the individuals from Sysco

25 Corporation who terminated him did not know the scope of the territorial restrictions

26 specified in those agreements. (Declaration of Daniel C. Mullenix, ECF No. 29 at

27 Paragraphs 31 and 37). Furthermore, Sysco Spokane President Kevin Pribilsky did

28 not know whether the prime rib transaction occurred in the restricted territory

**ORDER GRANTING MOTION**
**FOR PARTIAL SUMMARY JUDGMENT - 8**

designated in the agreements.  (ECF No. 30-1 at p. 165, Lines 2-6; ECF No. 60-1 at p. 159, Lines 22-25; p. 178, Lines 4-21; p. 179, Lines 5-9).

A stronger argument could be made that Mr. Mullenix's purchase of beef violated the May 12, 2012 "Confidentiality and Non-Competition Agreement" because it constituted a "business opportunity coming to Employee's attention, or conceived or developed in whole or part by Employee."  The geographical scope of this restriction is problematic, however (Idaho and areas of the Inland Northwest of Washington), unless a reasonable argument could be made that Clackamas County, Oregon was a location the "Employer may choose to expand its business . . . during the course of Employee's employment or shortly thereafter."  In any event, the May 12, 2012 agreement is not specified in the Employment Agreement as a grounds for termination with cause, and Sysco Spokane did not specify it as a ground for termination in its May 16, 2013 notice of termination.

What that leaves then is the alleged violation of the Sysco Corporation Business Code of Conduct (Section 6(b)(ii) of the Employment Agreement).  The first problem with this asserted ground for termination with cause is the May 16, 2013 notice provided to Mr. Mullenix.  The Employment Agreement required that notice of termination "specify Cause in reasonable detail."  The May 16, 2013 letter from Mr. Birch did no such thing.  It simply identified Section 6(b)(ii),(vi), and (vii) of the Employment Agreement as the grounds for termination with no supporting details whatsoever.  This is particularly significant with regard to the alleged code of conduct violation, the code being much broader in scope than the narrower confines of the "Noncompetition and Nonsolicitation Agreement," and Sections 9 to 12 of the Employment Agreement.  As noted above, the law requires that "at the time plaintiff was dismissed defendant reasonably, in good faith, and based on substantial evidence believed plaintiff" had committed the violation.  It is impossible to conclude from the perfunctory nature of Sysco Spokane's notice of termination that it reasonably, in good faith, and based on substantial evidence ,believed Mr. Mullenix had violated

**ORDER GRANTING MOTION**
**FOR PARTIAL SUMMARY JUDGMENT - 9**

any provisions of the Employment Agreement and the "Noncompetition and Nonsolicitation Agreement," let alone the code of conduct.

Mr. Birch's follow-up letter dated May 28, 2013, in response to an inquiry from Mr. Mullenix, provided "additional information regarding the reasons for . . . termination of employment for Cause," although it did not specifically refer to the code of conduct and explain what particular sections of the code had allegedly been violated, nor did it explain how the non-compete covenants had allegedly been violated. Mr. Birch's letter states:

> In early May 2013, Sysco Spokane began investigating allegations that you planned to start a meat company in violation of your obligations to Sysco Spokane.
>
> In the course of the investigation, Sysco Spokane learned that you procured meat products through an entity called D & C Enterprises, Inc. D & C Enterprises conducts business from your home address. In engaging in business through D & C Enterprises, you inappropriately made use of the Inland Meats name, including issuance of a check in the name of Inland Meats to procure meat products on behalf of D & C Enterprises. Similarly, you used a Certificate of Insurance naming Inland Meats for purposes of obtaining credit to make purchases through D & C Enterprises.
>
> At no point prior to the interview conducted with you on May 16, 2013 did you disclose to anyone at Sysco Spokane that you were engaging in the purchase of meat products outside of your role at Sysco. In addition, you did not have permission to use the Inland meats name for any purpose. Moreover, you engaged in outside business activities using Sysco resources. Further, you provided inaccurate and dishonest answers during your May 16, 2013 interview.

(ECF No. 29-11).

Mr. Mullenix does not deny that he purchased the beef through D & C Enterprises and that he issued a check in the name of Inland Meats to make the purchase. He does not deny that he used a certificate of insurance naming Inland Meats for the purpose of obtaining credit to make purchases through D & C Enterprises. He also does not deny that he used his Sysco e-mail account to send e-mails facilitating the purchase.

**ORDER GRANTING MOTION**
**FOR PARTIAL SUMMARY JUDGMENT - 10**

The Sysco Corporation Business Code of Conduct includes a section dealing with "Conflicts of Interest."  It lists examples of "conflicts or potential conflicts that must be disclosed and resolved."  (ECF No. 48-2 at pp. 65).  These include:

> • Receiving any financial or personal benefit (either yourself or through a family member) from or on behalf of a company that competes with Sysco [Corporation], does business with Sysco [Corporation] or seeks to business with Sysco [Corporation]
>
> •Taking, or directing another company to take, a business opportunity discovered through the use of Sysco's property or information or through your position with Sysco.  If you become aware of a business opportunity that Sysco may have an interest in pursuing, you should present the opportunity to Sysco.
>
> •Using Sysco's property, information or position for your personal gain or the personal gain of a friend or family member.

(*Id*. at pp. 65-66).

As Plaintiffs point out, Mr. Birch's May 28, 2013 letter said nothing about Sysco Spokane losing a business opportunity, nor is there a declaration from anyone from Sysco Spokane stating how a business opportunity was lost.  Furthermore, the court is unaware of any evidence in the record that Mr. Mullenix discovered his prime rib investment opportunity "through the use of Sysco's property or information or through [his] position with Sysco."  That appears to be of significance if it is the only type of business opportunity contemplated in the sentence which follows: "If you become aware of a business opportunity that Sysco may have an interest in pursuing, you should present the opportunity to Sysco."  Assuming, however, that the code of conduct contemplated the type of business transaction engaged in by Mr. Mullenix, and assuming Pacific Foods is a "competitor" of Sysco Spokane, this would not be a basis for termination with cause as it would constitute a violation of Sysco Spokane's duty of good faith and fair dealing.  As noted above, the duty of good faith limits an employer's discretion to interpret or define cause for termination in a manner which undermines the employee's reasonable expectations as to what "cause"

**ORDER GRANTING MOTION**
**FOR PARTIAL SUMMARY JUDGMENT - 11**

means. *Scribner*, 249 F.3d at 911.  The reasonable and justified expectation of Mr. Mullenix was that his non-compete covenants extended only as far as specified in the Employment Agreement and the "Noncompetition and Nonsolicitation Agreement," including their limited territorial restrictions.  Therefore, the court will not enforce the alleged non-compete covenants of the code of conduct which contain no territorial restrictions and the bounds of which, if any, are left entirely to the discretion of Sysco to determine.

It is not apparent how the issuance of an old check using the Inland Meats name, instead of D & C Enterprises, Inc., might be a violation of the code of conduct. D & C Enterprises was not acquired by Sysco Spokane.  The check was issued on a D & C account.  (Supplemental Declaration of Daniel C. Mullenix, ECF No. 61 at Paragraph 18).  D & C Enterprises, the successor corporation to Inland Meats, was clearly identified by Mr. Mullenix as the purchaser in the prime rib transaction. (ECF No. 48-2 at pp. 75, 77 and 81).

Mr. Mullenix's use of his Sysco e-mail account to facilitate the prime rib transaction may well constitute a code of conduct violation (using Sysco's property information or position for personal gain).  It is not apparent, however, if Sysco Spokane reasonably believed this to be so on May 16, 2013 when it issued the termination notice offering no details about the alleged code violation.  It was not until the May 28, 2013 letter that Mr. Birch specifically alleged that Mr. Mullenix "engaged in outside business activities using Sysco resources."  Again, the law requires that at the time of dismissal, the employer reasonably, in good faith, and based on substantial evidence,  believed the employee had committed the violation.

Section 6(b)(ii) code of conduct violations, unlike Section 6(b)(vi) and (vii) violations, are not specifically enumerated in the Employment Agreement as a cause incapable of being cured.  Sysco Spokane argues, however, that such violations fall within the broader exception specified in the Employment Agreement ("and with respect to those Causes that are not capable of being cured") and therefore, it was not

**ORDER GRANTING MOTION**
**FOR PARTIAL SUMMARY JUDGMENT - 12**

necessary to afford Mr. Mullenix 30 days to cure the alleged code of conduct violation.  Assuming that at the time of Mr. Mullenix's dismissal, Sysco Spokane reasonably believed he had used Sysco resources for personal gain, it nonetheless could not have reasonably believed this was a cause for termination which was incapable of being cured and therefore, for which no opportunity to cure should be given.  In the May 16, 2013 termination notice and the subsequent May 28, 2013 letter, Sysco Spokane offered no explanation why use of a Sysco Spokane email account to facilitate a transaction for personal gain, was incapable of being cured.  To date, Sysco Spokane has still not offered any such explanation, other than asserting in conclusory fashion that the transaction cannot be undone and inappropriately shifting the burden to Mr. Mullenix to explain why his alleged code transgression was curable.  Because Sysco Spokane relies on the "incapable of being cured" language as a basis for justifying its immediate termination of Mr. Mullenix, it is its burden to explain exactly why the alleged code transgression was "incapable of being cured."  Sysco Spokane did not have a reasonable belief that any code of conduct violations were incapable of being cured.  During oral argument, counsel for Sysco Spokane acknowledged that the mere use of the e-mail account was not incurable, but asserted what was incurable was the business opportunity allegedly lost by Sysco Spokane.  As discussed above, the court will not enforce the code's alleged non-compete covenants as they are contrary to the reasonable and justified expectations of Mr. Mullenix that he was bound only by the specific non-compete covenants set forth in the Employment Agreement and the "Noncompetition and Nonsolicitation Agreement."  Furthermore, based on the provisions of the Employment Agreement, Mr. Mullenix had a reasonable and justified  expectation that he would have an opportunity to cure any code violations.  Because Sysco Spokane did not provide him with that opportunity, it violated its duty of good faith and fair dealing in that regard as well.

The May 18, 2012 Employment Agreement provides that '[d]uring the Term,

**ORDER GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT - 13**

the Company may terminate Executive's employment (x) without Cause . . . upon thirty (30) days written notice to Executive."  The existence of this language does not excuse Sysco Spokane from justifying its termination of Mr. Mullenix pursuant to the prevailing Washington law set forth above.  Mr. Mullenix was notified he was terminated based on grounds for dismissal specified in the Employment Agreement. He was never notified his termination was "without cause."  Although Sysco Spokane could have terminated Mr. Mullenix "at will" and without cause, it did not do so.  It purported to terminate him with cause pursuant to the terms of the Employment Agreement and in so doing,  was obligated to reasonably and in good faith conclude, based on substantial evidence, that he had violated the non-compete clauses and/or the code of conduct and that it was not necessary to provide him with an opportunity to cure. The provisions in the Employment Agreement modified the at-will relationship and promised specific treatment in specific situations (i.e., notice and opportunity to cure).

Sysco Spokane did not have a "genuine belief" that it was entitled to immediately terminate Mr. Mullenix's employment and forego paying him the rest of the money he would have earned under the Employment Agreement.  *Duncan v. Alaska Fed. Credit Union*, 148 Wn.App. 52, 79, 199 P.3d 991 (2008).  The non-payment of these monies is not due to a "bona fide" dispute that is "fairly debatable." *Id*.  Therefore, it is "willful" and Mr. Mullenix is entitled to double damages under RCW 49.52.050(2) and .070.

**V. CONCLUSION**

At the time it dismissed Mr. Mullenix from employment on May 16, 2013, Sysco Spokane did not have substantial evidence from which it could have reasonably concluded in good faith that Mr. Mullenix had violated the non-compete covenants in either the Employment Agreement or the "Noncompetition and Nonsolicitation Agreement."  At that time, it did not have substantial evidence from which it could

**ORDER GRANTING MOTION**
**FOR PARTIAL SUMMARY JUDGMENT - 14**

have reasonably concluded that Mr. Mullenix had violated the Sysco Corporation Business Code of Conduct, or that if he did, said violation was incapable of being cured. Mr. Mullenix reasonably and justifiably believed he was bound only by the non-compete covenants in the Employment Agreement and the "Noncompetition and Nonsolicitation Agreement," and not by any additional non-compete restrictions contained in the code of conduct. He also reasonably and justifiably believed he would have an opportunity to cure any code of conduct violations. Sysco Spokane violated its duty of good faith and fair dealing by acting contrary to Mr. Mullenix's reasonable and justified expectations. Sysco Spokane acted arbitrarily and capriciously in terminating Mr. Mullenix purportedly for cause just one day before he was due a $100,000 bonus.

Because there are no genuine issues of material fact, Plaintiffs' Motion For Partial Summary Judgment Re Termination Of Employment And Willful Withholding Of Wages (ECF No. 27) is **GRANTED**. Mr. Mullenix is awarded his $100,000 first performance year bonus; his second performance year wage of $108,000; and his guaranteed second performance year bonus of $50,000, for a total of $258,000. Doubling this amount results in an award of $516,000. The court will consider additional relief (payable benefits and attorney's fees and costs) based upon a further motion filed by Plaintiffs.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and provide copies to counsel.

**DATED** this     21st     day of July, 2014.

*s/Lonny R. Suko*

_____
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT - 15**